Avery, J.
A bill in chancery, seeking to subject choses in action, claims and equities, to the satisfaction of judgments, when ■by the process of execution no property can be reached, is authorized in express terms by our statute, and might also be sustained in our courts of equity in a proper case, as it is supposed, even though no such statute were in existence. It is urged upon us, in behalf of the complainants, that in either view, this is a proper case for granting the relief sought, and that it is the only adequate remedy they can have. To accomplish the purposes desired by the bill, it will become necessary for the court to superintend the service devolving by law upon county officers, ,and to continue to do so in the case, probably through a series of years; to settle and fix the proportion due from Defiance county; to cause the amount so due to be evidenced by an issue ■of county orders, and generally to coerce the several officers of Defiance and Williams counties into the performance of their various public duties. If there be a remedy in this mode of proceeding, for the complainants, it must be conceded that it is through a somewhat novel exercise of the powers of this court, under its chancery jurisdiction. It would be a novel proceeding, too, for the court to direct a sale of the county orders by public auction to the highest bidder. Yet it is probable that no decree of the court, touching the disposition of these county orders, can benefit the complainants, unless it be an order of sale, by means of which they may obtain the money arising from the sale, or, becoming themselves the purchasers, secure a good investment. They would not find it for their interest, perhaps, to cancel their judgments or a part of them, against Williams jountv, for the sake of obtaining the orders in question of either Paulding or Defiance county. There is a claim noticed-in this bill which .may be -of the kind usually found in a creditor’s bill, that in favor of Williams county against John A. Bryan; but the amount is not set forth, nor is Bryan made a party. Aside, however, from these considerations, respecting the condition of the claims, there is a difficulty in the way of the complainants, growing out of the character of the party made defendant in *16 these several judgments. The judgments are against the commissioners of Williams county; not against a “person,” in the common acceptation of this word, which' is used in the statute above referred to, nor against private corporations; but against a public body, capable, it is true, of suing and being sued, but created nevertheless for no private purpose; representing the county indeed, but employed to act solely for the public interest. The county which has been denominated a quasi corporation, is the real defendant that must pay these judgments. Now, a county, with all its offices, is a necessary organization for political purposes, under the government of the state. Its officers all take an oath to perform their official duty, which is in each case circumscribed and defined by public law. It can, with its funds, raised by taxation or otherwise, construct and 'own, whenever it may be required within its limits, a bridge, a court house, public offices, jail or poor house; but with reference to none of these is it treated like a private person. For though there is no exemption by any legislative act, that I am aware of, who supposes that such property, like that belonging to individuals, can be sold upon execution at law ?
There is reason for believing that this provision to reach equities, found in the 16th section of the chancery act, (Swan 704,) was not supposed, when it was inserted in the act, to embrace such an organization as one of the counties in the state, and that the term “ person,” used in the law, if it had been supposed to extend so far, would not have been employed there without limitation. The legislature has, from the beginning, always had under its eyes these great divisions of the state; granting to them all the powers they possess, and at various times limiting or extending these powers as the benefit of their inhabitants separately, or the interest of the state at large, required. Counties have been compelled to erect buildings, and to engage in other expensive works, when they had no funds to make the payments required. They were obliged, therefore, in such cases, to procure the work done upon the credit of the county, and to issue evidences of the debt in the shape of coun *17 ty orders. At the time when they were contracting the debt, there was a law in force restricting the power of taxation within defined limits; a very proper and necessary law, it may be admitted, but one which by its operation rendered it in many cases impossible to pay the debt for several years to come. Contractors, however, in such cases, knew the value of the article to be received in payment for their work, and fixed their prices accordingly, and parted with these evidences of debt to purchasers who took them at a discount. Looking at the government of the counties, the whole of the legislation by which their duties, rights and powers have been all minutely regulated, it is obvious that they could not have been intended without being particularly named in a law, passed and required to operate so extensively upon individual and private interests. Further, in claims against individuals, there is danger, from delay or fraud, of ultimately losing the debt; the claims against a county must at some day be paid, and the interest constantly accumulating, must in the end be paid. The public interest requires that they should be paid, but without oppressive taxation and without sacrifice. To attend to this service, as well as to superintend all the other interests of the county, officers are appointed who are sworn to a faithful discharge of their duty, and that duty pointed out by a public law, which is known to all the other citizens of the county, or may be so known. Thus everyone may be as familiar with the condition of the finances and of the concerns of the county as the officers themselves. There is no need of any bill of discovery against these officers, no necessity of calling in the aid of courts, except to compel them to such a compliance with their duty as is pointed out in the law. To allow the interference claimed by this bill would serve only to endanger the plan for the government of the countiesl And whether we look at the policy likely to influence the action of the legislature upon this subject, or the principle which’ought to govern this court in the exercise of its general chancery powers, the same result will be arrived at in the present case.
*18 To the powers of the court in its jurisdiction at law, frequent appeals have been made, to coerce public officers to the discharge of their duty. Not so to its chancery jurisdiction. Yet in the history of the counties of the state, many of them have been embarrassed and unable for years, and probably all of them for a considerable period of time, to pay off their debts. It has hardly been the sense of the profession, that a bill in chancery could be maintained to seize upon claims and dispose of them as contemplated by this bill. If it had been so, a solitary case would not, at this late day, have found its way for the first time upon our docket.
The court is of opinion that neither by the section of the statute which has been considered, nor by virtue of its general chancery powers, can relief be granted to the complainants. Their bill must therefore be dismissed.